Your Honor, in a situation where there is no other evidence that links a suspect to a crime except for the statement of a single witness, the credibility of that witness is  If the victim was in the West Country for decades, it's been recently reaffirmed in the Winfrey decision. There is a conflicting statement between where he says he was and what the girlfriend says. Detective Perez testified that she didn't ever make a decision as to which was accurate. So other than that, on the issue of credibility, long before the ill-fated lineup in which Miller picks half of the lineup, he had demonstrated that he had a complete lack of reliability on virtually every issue related to the case. As the court knows from the summary judgment evidence, after Detective Perez interviewed Miller on July 31st for two hours, she testified in her summary judgment evidence that she did not believe that probable cause existed. And she specifically said the reason she didn't believe probable cause existed was because of the inconsistencies in what Miller was saying. Now, that is particularly noteworthy because in the July 31st two-hour interview... Does it matter what she thought or is it just an objective standard? I think it does matter whether she recklessly disregarded the truth and would go to her intentionality. But on the entire spectrum... But in terms of reconstituting the affidavit and figuring out whether there's probable cause, is that an objective or subjective standard? I believe it's an objective standard. The reason that I believe that is noteworthy, though, is because in the first two-hour interview, she learned from Christopher Miller that Miller claimed that Anderson Jones had shot and killed the complainant. That is the language of the probable cause affidavit, which she says was too filled with inconsistencies at that point to be believed. So we would have to then believe that somehow on the spectrum, he moved towards reliability despite the fact that in the next eight-hour interview, it was absolutely filled with inconsistencies throughout, changing story. We have it all listed, and I hope that the court... It's obvious from the transcript, but it's even more obvious from the recorded interviews that have been provided to the court. This individual was unreliable from wherever he was on the spectrum at the beginning, knowing that he had some intellectual challenges, that he had been smoking synthetic marijuana. Wherever he was on most credible to not credible, he moved towards not credible, and she confirmed that. And throughout the questioning, all he did was move further and further and further towards not credible. The... Counsel, when did Mr. Jones go to jail? I'm sorry? When did he go to jail? August. He went to... He was arrested on August the 1st on a... for failing to walk on the correct side of the sidewalk and then subsequently a search of a car for marijuana. And so he went to jail on August 1st for the possession of between two to four ounces of marijuana. Yes, Your Honor. And as I understand the Section 1983 claim in this case, the argument is that he spent 17 days in jail and he shouldn't have been in jail, right? That's the theory. Yes. Okay. So he goes to jail on marijuana, August 1st, 2015. Is there any dispute that he had marijuana or that he was lawfully arrested for the possession of somewhere between two to four ounces of marijuana? No, Your Honor. Okay. When was he charged with capital murder? He was charged with capital murder on August 2nd, the early morning hours of August 2nd. So he was already in jail? He was already incarcerated. And when were the charges for capital murder dropped? They were, I believe it's on or about the 13th or 14th of August. Right. My record shows 13th. So he's dropped on the 13th. And when were the charges for marijuana dropped? Subsequent to that. Exactly. So on the 17th of August, the marijuana charges were dropped. So if you want to say he was in jail unlawfully, aren't you attacking the wrong probable cause? You would need to show he's in jail. I mean, was there a different custody arrangement for being charged with marijuana versus being charged with capital murder? Your Honor, the court's essentially suggesting, I believe, that if there is probable cause to arrest for walking on the wrong side of a sidewalk, which there would be, that a police officer, a day later, could knowingly and intentionally or with reckless disregard for the truth, make material misrepresentations and omissions in an affidavit that would cause a warrant to be issued for a capital murder. No, no. I'm sorry. I'm not suggesting that in any way. What I'm suggesting is that if you want damages under Section 1983, you need to show an aggrievement that can be compensated under Section 1983. And what I'm understanding the aggrievement from Judge Fitzwater's decision below, from the record, from your brief, is that he was in jail from August 1st to August 17th, and he should not have been in jail. That's what I'm understanding the argument to be. And so my question to you is, I thought he was already in jail from August 1st to August 17th for possession of between two to four ounces of marijuana. Your Honor, the reality would have to be recognized that on a marijuana charge, Class B misdemeanor, with a $500 bond would be quite different than the $1 million bond that was holding him on the capital murder. Did you have evidence that there would have been a different bond for the two to four ounces of marijuana possession, that he could have made that bond? I don't know that we produced evidence that he could. But as a matter of fact, any person who's being held on a $1 million bond, and to say that they simply, their damages are gone simply because they never had an opportunity to make the $1 million bond, we wouldn't know the answer to whether he could have made a $500 bond. But presumably, it's on an entirely different day. It does seem that the Court is suggesting that the officer, with any valid probable cause for any offense, would be able to charge for a capital murder or for a crime of which the bond would be set to where they could make it. I think the point is, is he being detained because of this murder charge that you think is fabricated? Right. Or was he already being detained? I mean, that is, that's because your damages are being in jail. But did the city ever, I mean, I had the same sort of thoughts, but did the city ever move for summary judgment based on the fact that he should have been in jail that whole time anyway for the marijuana charge? Not that I'm aware of. And Fitzwater didn't grant summary judgment on that crime? Fitzwater reconstructed the affidavit, and of course, we quibble with, well, we strongly disagree with what he included in the reconstructed affidavit. For example, of all of the numerous changes in stories and inconsistencies that existed, he indicated, Judge Fitzwater indicated Miller's account of the crime was inconsistent and at times inaccurate. We believe that post, that we believe that the correct analysis as set forth by the court in Winfrey is that specific omissions of critical material facts must be included specifically when we are talking about a situation in which the probable cause rests on a single witness. I believe it is noteworthy to point out that in Winfrey, that was a witness who it was claimed was providing facts that were not known to the public. And the court said, well, he was providing a lot of inaccurate facts is what he was doing, but the court said there were actually a couple of facts not known to the public that he did provide, yet, and they went in the reconstructed affidavit, yet the court still maintained that a reasonable magistrate would not have concluded that there was probable cause. When the district court reconstituted the affidavit, it found falsities and it reconstituted the affidavit, and it said that Miller was low-functioning, had inconsistencies, and I think it was under the influence of some substances. What additional facts do you think should be included in the reconstituted affidavit? Well, we believe, I believe that the facts starting with his failure to know how he got to the incident, I mean, it would be a litany of literally everything he said from how the incident, how he got there, how the alleged suspects got there, as to how it occurred. He claims that the light was off when, in fact, it was on. He says there was one witness, or there were no witnesses in there when, in fact, there was a lady working in there. He was wrong about where the shooting occurred, inside or out. He was wrong on the most material of all facts. We believe, we're not suggesting that every single mistake or inaccuracy by a witness would always have to be included, and I recognize there would be some line in some case where someone could complain, well, that small fact should have been included, or this one should have been included. However, in this case, I don't think we have that. We have an overwhelming number of facts that cannot be reduced or distilled down to a simple statement of he was at times inconsistent and inaccurate. Detective Perez, in her summary judgment affidavit, recognizes that reliability is critical in this case because Detective Perez, in the summary judgment affidavit and before this court, says she knows Miller to be reliable. Why? Because he provided facts that were not known to the public. It is simply true that summary judgment evidence indicates that is simply a false statement. Wouldn't the fact that, I know there's some inconsistencies about him admitting to participating in the robbery, but wouldn't the fact that a suspect admits involvement give some credibility to his statement then? Mr. Jones never admitted involvement or any participation. The only person who claimed involvement was Mr. Miller, and his credibility is Miller. Miller, who I'm thinking about, yeah. Miller. And in that instance in which he is the only evidence with no other evidence linking it, there has to be a basis of some reliability. As I mentioned, he moves along this path over a day or two to where he's provided incorrect details on virtually everything. But the coup de grace, of course, is the lineup, and he picks half of the people. And I do submit to you that, as every police officer in the case said, of course that statement about picking him out of a photo lineup means one and only one person. Each of you, and I would venture to say every judge in the country, if presented that statement and then learned that half of the people of the six had been picked out, would say immediately, get that officer down here. That is a false statement. It is blatantly misleading, and whatever remnant of reliability this witness had left, it was gone when he picks out half of the people. Now, they try and say he was just confused. However, Detective Perez's testimony is that she told him prior to the lineup that it would be six different people. It's simply not correctable by then showing him a one person, a single photo. It is clearly suggested when of the three he picked, she says, is this the one? What if she had picked the other, either of the other two, and said, is this the one? Did she just say that she told him there were six different people? The summary judgment evidence shows that she told him there were six different people. Another reason that we know that her claim that she provided, that Miller provided reliable information because of this claim, that it was not known to the public, and that's what she, Detective Perez, is basing it on. We know that isn't true because not only does the summary judgment evidence record just clearly establish it's false. Within hours, the Dallas Police Department released the individual upon learning of the lineup, and they conducted their own investigation, and they issued a public statement that after investigating it, they determined that the witness was unreliable. If there were any facts, as they suggest, that Miller had produced that were not known to the public, I submit to you that the suspect would not have been released within hours, and certainly the DPD's official position on the matter wouldn't have been that he was unreliable. Let me ask you one question before your time runs out. If we get to qualified immunity, should we consider the fact that Miller, who he told the officer that KT and Weezy were the two people involved in the incident, that Miller then took the officer to where KT lived or worked, and then this guy, KT, admitted to the officer that his nickname was KT? Should we consider that? I mean, in the case you say you consider all surrounding circumstances. If we get to qualified immunity, shouldn't we allow that to be considered? I don't believe that it changes or would offer any type of objective reasonableness for the officer's actions, and the reason being that the nickname doesn't really change. You could substitute that Miller said Anderson Jones shot the suspect instead of that KT did. What the nickname does is it later allows this sort of an aha moment. What is your nickname? It is KT. But it's really nothing more than Miller saying Anderson Jones was the person that did it, and ultimately, had there been some evidence of that, she would have probable cause, but with each passing statement that he made, she recognized this guy is not reliable. Judge Oldham had a question, and you can answer it and then wrap up. Thank you. And I was just going to ask, when you come back for rebuttal, I would be grateful if you could give me the best record site for the proposition that Mr. Jones would have gotten out of jail before the 17th of August but for the capital murder charge. Okay. Thank you. Thank you, Your Honor. All right, we'll now hear from Ms. Wilson. Ms. Wilson. May it please the Court. Good morning. My name is Tasha Wilson, and I, along with my co-counsel, James Pinson, represent Elena Perez, the appellee in this case. This Court should affirm the District Court's grant of summary judgment because Ms. Perez is entitled to qualified immunity based on the appellant's Fourth and Fourteenth Amendment claims. Today, I intend to focus on the Fourth Amendment claim and leave the Fourteenth Amendment claim to the appellee's brief. The District Court correctly decided the Fourth Amendment claim because the appellant failed to establish under either prong of the qualified immunity analysis that Perez was not entitled to qualified immunity. First, the Court's reconstructed affidavit establishes probable cause to arrest Jones for capital murder, and second, Perez's conduct in seeking the warrant was objectively reasonable. Turning to my first point, the appellant's Franks-based false arrest claim is based entirely on allegations that Perez made false and misleading statements in her initial probable cause affidavit. The District Court considered those alleged false statements and false omissions and determined that the affidavit should have been reconstructed, and in doing so, the District Court reconstructed the affidavit in the manner in which the appellant asked. It included information that was omitted from the affidavit, and it also removed the alleged misstatements. The District Court, after having done that, still determined that probable cause existed based on the totality of the circumstances known to Perez at the time, including the fact that Miller consistently stated that K.T. was the person who shot Ortega. Miller confessed that he was an accomplice in the underlying crime. One thing I find remarkable is, I mean, normally if someone confesses to a capital murder, you lock them up, and they let them walk out on the street, so that does seem to show you all these credibility problems. It's just almost unheard of to let someone who confesses to capital murder go back out on the street. Your Honor, and in this instance, Perez spoke to her supervisor about the circumstances concerning Mr. Miller's statements. Mr. Miller admittedly gave inconsistent statements about whether he was there, whether he was not there, and they did not have the actual individual who shot, they didn't have in custody the actual individual who shot Ortega. They didn't even know who this individual was. Miller said that he knew who K.T. was, and they needed to be able to identify who the shooter was. They needed to be able to identify and match the name K.T. with the individual who they later determined was Anderson Jones. And once they did that, on August 1st, Mr. Miller went out to the apartment complex and identified K.T. to another Dallas police officer who was with him. They came back, and when you have the photographic lineup, it wasn't a matter of trying to identify who the shooter was. K.T. knew who the shooter was. I understand that timeline, but none of that explains why Miller wasn't arrested. I mean, you can arrest someone and then say, we're going to take you out in the cop car and show us who did it. They don't even arrest him after he goes out to the apartment complex. And as you said, Perez went to talk to her supervisor and noted the credibility problems, among other things, and they decide, well, let's not arrest Miller. But yet those same credibility problems are enough to arrest someone else. And, Your Honor, Perez made a judgment call. In investigating this crime, she admittedly had a very difficult suspect. This was an extremely difficult case. And she, in her judgment, and after having spoken with her supervisor, determined that they would want the actual individual who shot K.T. If Miller was able to identify this individual as the person who shot Ortega, then they would go ahead and proceed with arresting Miller as well. She made a decision based on what her supervisor told her and then her best judgment based on the evidence that she had, not because she was being reckless or because she was knowingly and intentionally attempting to mislead a magistrate judge in determining probable cause, but she made a— If she didn't do anything wrong, why is she no longer a detective? Your Honor, Ms. Perez violated DPD policy in the photographic lineup. But the violation of a departmental policy does not give rise to a constitutional violation here. And so even though— None of the grounds for her employment troubles were misleading the magistrate in connection with the lineup? Your Honor, all of that happened after the termination or—excuse me, the— Was misleading the magistrate part of what led to her demotion? Yes, Your Honor, the record reflects that it did, but that was post—after she had sworn, had made the sworn statement. That's what you mean it was after, right? I know—I mean, they couldn't punish her until after, but the punishment was based on what she—in part on what she did in filling out that affidavit. And, Your Honor, it was in the context of the photographic lineup. And what Officer Perez did in the context of the lineup, which is what DPD looked at, it was an internal procedure. It had nothing to do with the totality of the circumstances and the evidence known to Perez at the time. She had a number of factors that she was considering that were not even part of the photograph— and part of that was the consistency of an accomplice to a murder and this individual consistently saying that K.T. was the shooter. And these are the types of facts that she was relying on, and all of the inaccuracies and inconsistencies statements that Miller made, none of them exculpated Jones. There was no evidence that Jones was not the shooter. There was no evidence that he was not present at the scene. And his alibi that he provided Perez during the investigation conflicted with his girlfriend. I mean, what he said—what Mr. Jones said where he was conflicted with what he said his girlfriend was going to say. So when you're looking at the totality of the circumstances and what Perez knew, there is at least arguable probable cause to arrest Jones for the murder of Ortega. Thank you. The— Let me ask you about— she didn't put in the affidavit about Miller going to the apartment house and identifying K.T. Can we consider that and the knowledge that she had in connection with presenting the affidavit? Your Honor, I do not believe that you can in connection with the affidavit in determining whether the reconstructed affidavit established probable cause. But when you go to whether her conduct was objectively reasonable, whether no reasonably competent police officer could have believed that a warrant should issue, I do believe that you can consider that. What's your best case for that? What's the best case? What's your best case for that? The—even in Winfrey, Your Honor, I believe that in Winfrey v. Rogers, the court says that you can consider the totality of the facts known to the officer in determining the probable cause. Wasn't that where it said one police officer can rely on another police officer's investigation? Is that what that case is? No, Your Honor. It doesn't—Winfrey stands for the proposition that if there is exculpatory information available to the defiant but it's not included in the warrant application, that it cannot be considered to be probable cause. I mean, while we didn't have that situation insofar as the exculpatory information because there wasn't it here, the court said that you have to look at the totality of the circumstances in determining the objective reasonableness of the police officers in determining probable cause. If Miller's statement, even discounting the lineup, establishes probable cause, even with the inconsistencies, to believe Jones is the murderer, I mean, I know it's ultimately an objective standard, but why would DPD let out this violent murderer, and he's still, I assume, walking out on the streets today, if there's probable cause to believe he violently killed the folks? Well, Your Honor, the Dallas Police Department's procedures concerning photographic lineups state that when you are identifying an individual, you can't have the subsequent identification like we had here with Perez going in and showing Miller. Right, I get that, but they don't say, and if that happens, you have to ignore all this. If you have great other evidence of probable cause, you have to ignore that and let the person go free. The question, as the Frank's test says, okay, you throw out the bad part. You throw out the bad part and look at whether there's still probable cause, but the police must have thought there wasn't probable cause, or they would have held this guy suspected of a violent murder. Your Honor, based on Miller's inconsistent and inaccurate statements, the Dallas Police Department determined that he should be released and not proceed further, but that does not mean that probable cause, that no reasonable police officer could have determined, based on the facts presented to Perez, that probable cause did not exist. What you had were, you have a police department and several DPD officers looking at this in the prism and the context of DPD procedures, not the totality of the facts known. And perhaps, in retrospect, they could have, or they should have left Miller in jail, but what we had were the inconsistent statements and DPD decided that going forward on a criminal trial with an individual giving these kind of inconsistent statements may not meet the standard of proof beyond a reasonable doubt for conviction. But the standard here is probable cause, and whether the facts known within the police officer's knowledge was sufficient to warn a belief that the individual who was arrested committed the crime. I mean, to a fair probability, that's what the standard for probable cause is, and that's what Perez had in this case. And also, Your Honor, going back to the objective reasonableness of Perez's conduct here, there were facts known to Miller that were not in the public domain. For example, the two shots that Miller said that he heard, two shots, that was consistent with what another eyewitness said in this case, Anna Ayala, who was the other subway employee at the scene at the time of the murder. Miller stated that he heard two shots, that was consistent. He also said that the shooting occurred in front of the subway, which was consistent with what Ayala said because she said that Ortega was shot at the doorway of the restaurant. So those additional facts, and they were not made known to the public, and the appellant can point to no news articles or reports stating that those specific details were made known to the public and that Miller was essentially regurgitating what he had heard already. It was already public knowledge. He points to no evidence of that. And then to the court's point about whether Perez told Miller that there were going to only be six different individuals in the lineup, that is not an accurate reflection of the record because what Perez told Miller was that there were going to be six people in the lineup, not six different people. And Perez and Miller, having seen the individuals, he believed, and it's in the record, that he believed that the people that he picked out were the same individuals based on his understanding looking at the photograph. But again, the photographic identification was not to identify who the shooter was, but it was more to verify or confirm because on August the 1st, Anderson-Jones was in custody, but Perez did not know him by face. She had to rely on Miller telling her who K.T. was. The evidence reflects that Anderson-Jones admitted that his nickname was K.T. So we have Miller who's saying that he only knows Jones by his street name. He knows him by K.T. You have Anderson-Jones saying, yes, I am known as K.T. She put those together, and in the affidavit she stated she provided Miller's, according to Miller's statement, she provided Anderson-Jones' legal name rather than the street name. That was a misstatement. The information itself was true. Insofar as the lineup goes, it's true that Miller picked Anderson-Jones out of the lineup, not according to DPD policy, but the fact remains that she did. Finally, Your Honor, to the Court's question about the constitutional harm on a Fourth Amendment claim, plaintiffs, in order to establish a Section 1983 constitutional violation, the plaintiff would have to establish that there was no probable cause for his arrest in the appellant here, and it was raised to the district court by the appellee in the appellee's brief. The court did not resolve this case on that claim, but it noted it in a footnote. That doesn't matter for us one way or the other, right, because we can affirm on any basis fairly supported by the record? Yes, Your Honor. This is a summary judgment. But you did raise that as summary judgment? Yes, Your Honor, we did, and the court decided that because the focus of the claim was the Frank space, the court noted in a footnote that there was no constitutional violation based on Frank's, and so it did not reach the issue of the probable cause for the initial arrest. Does the record show where Mr. Jones was held when he was in jail from August 1st to August 17th? Which jail? Or is there only one jail? Do you know? I do not believe that the record states where he was held, but typically it would have been at Lusterit in Dallas, but it doesn't reflect him. Does the record show that there would be a different jail cell or custody level or any sort of harm or damage that would be done comparing someone who's held for a marijuana possession charge versus someone who's held for a capital murder charge? Do they put them in, like, greater security or they shackle them differently or something? No, nothing, Your Honor, nothing like that. Your Honors, for these reasons and those set forth in the appellee's brief, this court should affirm the district court's grant of summary judgment based on Perez's entitlement to qualified immunity because the appellant first failed to establish a violation of his constitutional rights under the Fourth and Fourteenth Amendment, and secondly, because the appellant failed to raise a genuine issue of material fact as to whether Perez's conduct in seeking the warrant was objectively reasonable. Thank you. It's in the district court opinion that you argue he would have been held anyway the whole time and not on the marijuana? No. I thought you said the court put a footnote. It did, and Your Honor. That's what I'm looking for. On page 346. I'm sorry. Well, we can go back and look. It's fine if you had it. We'll look. All right. Rebuttal. Thank you, Your Honors. Judge Oldham, with respect to your question, I believe that the evidence in the record at 102 is that the bond was $1 million. I don't believe there is further evidence of his financial wherewithal to have posted a lower bond. I do think the courts could arguably take judicial notice of the fact that a Class B misdemeanor bond would be $500, but to the extent that the court is troubled with the idea that there was – I'm sorry. I don't mean to interrupt, but can I just pause you because I don't want to get too far down the road. Is there evidence that he could have paid $500? Off the top of my head, I can't think of any in the summary judgment record on that issue. The court in a well-discussed Fifth Circuit case, Cole v. Carson, has looked at really this precise issue that – or an issue that we seem to be pointed at, at least from some of your questions, and that being that in an instance where there is a constitutional violation, but because another – the Fourth Amendment might be foreclosed for some reason, the constitutional violation does not just go away. And Cole v. Carson established that in those situations, a claim under the Fourteenth Amendment due process would be proper. And that was decided after Albright, and we believe that in that particular case, there was evidence that the young man who was – where evidence was fabricated in the form of a false report, he could have been arrested for a gun charge. There was probable cause to arrest him for a gun charge, but the court in Cole indicated that that constitutional violation of the fabrication of the evidence against him that caused the more serious charge to lie did not simply go away. And I'm not suggesting in any way that it does go away, nor am I, to your point earlier, suggesting anything about this case. I'm just asking you a question given that you have a Fourth Amendment claim for damages, and I'm just trying to figure out what the damages are if he was lawfully held on marijuana. With respect to the incarceration, I've given you my best answer, but there would certainly be – when charged with a capital murder that carries the death penalty, there would certainly be emotional damages that would certainly exist at the time that he's charged, I believe. Specifically, addressing comments made by counsel, they still appear to be maintaining that he picked – that Miller picked him out of a photo lineup. She says that we believe it's misleading. I guess that's one that the line is drawn as to whether or not a police officer can tell a judge that comment and, in fact, it be completely false. But they maintain that it isn't false. They also – as far as the fact that counsel is saying that they would not necessarily have to put into the record these – I'm sorry, into the affidavit these misstatements and these omissions because they are not exculpatory. They did not, as counsel say, exculpate Jones. The standard, the totality of the circumstances test for whether probable cause exists looks at all the factors, and if we go all the way back to Illinois v. Gates, that case, which established the totality standard, specifically said that veracity, truthfulness, reliability are highly relevant. It just prescribed a more common sense-based test in establishing probable cause. And the – Detective Perez would suggest that the two statements in the probable cause affidavit are mutually exclusive. You can remove one about the lineup and still have probable cause, and we maintain that his reliability is essential for the first statement, and she says she didn't believe him, and nothing changed. It only got worse. But the lineup, the failure in the lineup is a gross indication of his lack of reliability, if there was anything left at that point. It appears that as far as whether there were specific – there was any specific information provided by Miller that was not known to the public, we disagree with counsel's statement and would ask you to please, on that, go to the record. He first says he didn't hear shots. Then he says there were two shots. The witness said there were four shots. He was not correct on that, and he was not correct. He said that the witness was shot outside. He says that – I'm sorry, that the decedent was – pardon me. You can finish up your thought. Okay, was killed outside. In fact, he was killed inside. All right, thank you, counsel. Ms. Wilson, I found what you were referring to. It's footnote 12 of the district court's opinion. All right, the case is submitted. We'll call our last case of the day, Ironshore, Europe v. Schiff-Hardin.